DAUPHIN CORPORATION, Plaintiff,

v.

SENTINEL ALARM CORPORATION, Edward J. Lavino, II, and James J. Davis, Defendants.

Civ. A. No. 2356.

United States District Court
D. Delaware.

June 29, 1962.

John P. Sinclair, Berl, Potter & Anderson, Wilmington, Del., and Windels, Currie & Rice, New York City, for plaintiff.

Clair John Killoran, E. Dickinson Griffenberg, Jr., Killoran & Van Brunt, Wilmington, Del., for defendants Sentinel Alarm Corp. and Edward J. Lavino, II.

John M. Bader, John Biggs, III, and Bader & Biggs, Wilmington, Del., for defendant James J. Davis.

LEAHY, Senior District Judge.

Dauphin Corporation alleges defendants Sentinel Alarm Corporation, Ed-

ward J. Lavino, and James J. Davis have committed fraud under the Securities Acts of 1934 (Rule X–10B–5) and, alternatively, under the Securities Acts of 1933. The crux of plaintiff's claim is that it was induced by alleged untrue and misleading statements of material facts and non-disclosures on the part of defendants to surrender a $200,000 note of Sentinel Alarm Corporation.

Dauphin was incorporated in Delaware in 1959. Davis was counsel for Dauphin and the entire formation, organization and financing of Dauphin was handled by him,[1] on behalf of Hofmann Industries and various members of the Hofmann family. Davis was also counsel to and secretary of Sentinel; Lavino was president and controlling stockholder of Sentinel.[2]

One month after the formation of plaintiff Dauphin, arrangements were made for its initial capitalization among several stockholders pursuant to a subscription agreement dated April 29, 1959.[3] Pursuant to this agreement, a total of 236,162 shares were issued to subscribers, each of whom contributed assets on the basis of 1 share of plaintiff's stock for each $4 of assets contributed. Davis served as counsel to and sponsored the participation of Lavino in this initial capitalization through Sentinel Alarm, which was controlled by Lavino. Sentinel Alarm subscribed to 50,000 shares of plaintiff's capital stock in exchange for Sentinel's $200,000 promissory note due June 15, 1962, and bearing interest at 6% per year.[4] The note provided that at the option of Sentinel Alarm the $200,000 short term obligation would be converted into 15-year debentures of Sentinel Alarm in the same total face amount and bearing the same

rate of interest. The board of directors of Sentinel Alarm authorized the issuance of the $200,000 note.[5] Thereafter, the note and the 50,000 shares were duly exchanged, and the note was reflected as an asset on plaintiff's audited and independently certified financial statements and the shares were shown as duly issued and outstanding.[6] Davis and Lavino were elected directors of Dauphin on October 1, 1959.

The financial condition of Dauphin quickly deteriorated and by early 1961 had become acute. Lavino telephoned Richard G. Garrett, Dauphin's president, and requested him to return the $200,000 Sentinel Alarm note held by Dauphin, claiming he had returned the 50,000 shares by delivery to Davis and that the transaction should be "reversed," since the original subscription by Sentinel was conditional upon a public underwriting of Dauphin's stock which had not occurred. Lavino claimed an oral agreement existed between Davis, acting for Dauphin, and Sentinel providing that should no public underwriting of Dauphin's stock take place, Sentinel could return the Dauphin stock received and retrieve its note. Garrett replied he had no personal knowledge of either the original subscription agreement or the alleged oral agreement, and informed Lavino that the Sentinel note was on deposit at the Wilmington Trust Company, Wilmington, Delaware, and would have to be removed by the treasurer.[7] On learning of Lavino's request, Dauphin's treasurer and chairman, both parties to the original subscription agreement, denied any knowledge of the alleged oral agreement and refused to return the note without formal board of directors action or expert opinion of counsel.[8]

---

1. Affidavit, Fosnocht, ¶¶ 2, 16.

2. Affidavit, Fosnocht, ¶ 3; Affidavit, Lavino, ¶¶ 1–4.

3. Affidavit, Fosnocht, Exhibit A; Affidavit, Hofmann, ¶ 4.

4. Affidavit, Fosnocht, Exhibits B, B–1.

5. Affidavit, Fosnocht, Exhibit B–2.

6. Affidavit, Fosnocht, ¶¶ 5, 6; Exhibits C, D, H.

7. Affidavit, Garrett, ¶ 8.

8. Affidavit, Fosnocht, Exhibit J; Affidavit, Hofmann, ¶ 9.

Upon request of Lavino, Davis' law firm, Davis, Marshall & Crumlish, of Philadelphia, sent Dauphin 5 certificates for 10,000 shares each of Dauphin's common stock. These certificates were made out to DeMarck & Co., the "street name" used by the law firm to hold securities.[9] These were the 5 certificates that had been received from Dauphin's transfer agent by Lavino on March 2, 1960 in exchange for the original certificate for 50,000 Dauphin shares issued in the name of Sentinel Alarm.[10] On March 23, 1961, Dauphin was verbally instructed by the Davis law firm to obtain the note from Delaware and re-deliver it to Sentinel with the statement that an opinion of counsel would be forthcoming immediately. On March 30, 1961, Lavino resigned as a director of Dauphin.

On April 5, 1961, Arthur J. Kania, law partner of Davis, sent an opinion letter from the firm to Dauphin's treasurer, stating plaintiff was under an obligation to return to Sentinel the $200,000 note.[11] Attached to the letter was a photostat of what purports to be a memorandum signed by Lavino and initialled by Davis and Kania, which apparently reflects an understanding between them that the 50,000 Dauphin shares owned by Sentinel Alarm would be sold in a public offering. This document bears an ink-written date corresponding to the date of the subscription agreement.[12] On April 10, 1961, relying on the opinion letter, Dauphin surrendered the note to Davis' law partner, in the presence of Lavino.[13]

Plaintiff alleges while it faced insolvency, defendants Davis and Lavino, both directors of plaintiff, and Davis, an officer of and general counsel to both plaintiff Dauphin and defendant Sentinel, joined in the fraudulent scheme and made misrepresentations to plaintiff which caused the removal from Delaware of plaintiff's property, the $200,000 note, so that it could be illegally surrendered to defendant Sentinel.

Defendants Davis (now deceased), Sentinel Alarm, and Lavino, argue:

1) A binding oral agreement existed between Davis and Sentinel providing that *if no public underwriting of Dauphin's stock occurred*, Sentinel could return its Dauphin stock and retrieve its $200,000 note.

2) There was never any effort to conceal the attorney-client relation between Davis and Lavino and Sentinel.

3) No proof has been submitted that the opinion given by Davis was given with knowledge it was legally incorrect, and thus the opinion cannot be classified as that type of untrue statement of "material fact" the Securities legislation requires for a violation to have occurred.

Defendants Sentinel Alarm and Lavino argue as well that if any fraud has occurred, it came by virtue of the legal advice given by Davis and not by Lavino's request for the return of the note and the re-delivery of the stock. Defendant Davis argues as well that this Court lacks venue to hear the present cause and lacks jurisdiction over indispensable parties.

Plaintiff moves for summary judgment; defendants Sentinel Alarm and Lavino file cross motions for summary judgment;[14] Davis moves to dismiss on grounds of lack of jurisdiction over the person of defendant, lack of venue and failure to state a cause of action under any of the Securities Acts.

9. Affidavit, Fosnocht, ¶ 18.

10. Affidavit, Garrett, Exhibit A, A–1, through A–5, B, B–1 through B–4.

11. Affidavit, Fosnocht, Exhibit L.

12. Affidavit, Fosnocht, Exhibit L–1.

13. Affidavit, Fosnocht, ¶17, Exhibit M.

14. Defendants Sentinel and Lavino originally moved for dismissal on the same grounds as has defendant Davis. They have, however, elected to abandon those aspects of their motion to dismiss based on lack of jurisdiction over the person and lack of venue and to press only that portion of their motion based on failure to state a claim under the Securities Acts and request that the Court consider their motion one for summary judgment. Brief of Defendants Sentinel and Lavino, p. 5.

## I.

1. Defendants Sentinel and Lavino oppose plaintiff's motion for summary judgment for "the record fails to disclose either defendant made any untrue statement or omitted to disclose a material fact" in connection with the transactions between the parties. Defendants argue, "Contrary to plaintiff's contentions, these defendants also argue the record in this action indicates there was an oral agreement between Lavino, acting as President of Sentinel, and Davis, acting for plaintiff Dauphin, under which, if there was no public underwriting of Dauphin's stock, Sentinel could return the Dauphin stock and receive back its $200,000 note.[15] * * * The obvious purpose of the agreement was to protect Sentinel in the event there was no offering. Under these circumstances and in the light of Sentinel's needs, the existence of the oral agreement is both reasonable and credible."[16] But plaintiff denies any oral agreement that Sentinel's subscription for the Dauphin shares was conditional, for "Obviously there was no such agreement. It is not a part of the subscription agreement, nor is there any reference to it in the subscription agreement."[17] Again, "There never was any side agreement, oral or written, secret or open, to the effect that Sentinel's subscription was 'contingent'." [18]

2. The complaint, here, alleges causes of action under Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j; Rule X–10B–5, 17 CFR. 240.10b–5 thereunder; and Sec. 12(2) and 17(a) of the Securities Act of 1933, §§ 77l(2), 77q(a).[19] The blanket of the statutes covers any purchase or exchange of securities involving misrepresentation or any scheme to defraud. The fraudulent scheme alleged to exist here, and "established by the affidavits was that defendants Lavino and Davis undertook to cause the illegal exchange of $200,000 note owned by plaintiff and executed by defendant Sentinel,[20] for 50,000 shares of plaintiff's stock issued to defendant Sentinel. * * * The illegal purpose of this scheme was to cancel out for no consideration this $200,000 obligation of Sentinel to the benefit of defendants Lavino and Davis." [21]

3. For summary judgment to be granted, on the basis of the paper record (consisting of pleadings, affidavits, depositions, etc.) in favor of either plaintiff or defendant, the alternatives are in sharp focus, e. g., (1) there was an independent oral agreement which had a sufficient legal existence under which defendants Lavino and Sentinel could return their subscription stock and get back their $200,000 note if plaintiff's original underwriting was not completed—in which case defendants win; or (2) there was no such oral agreement between the parties, or assuming there was such an agreement, plaintiff in returning the $200,000 note was the victim of misrepresentations and a scheme to defraud in violation of the securities statutes and Rule X–10B–5—in which case plaintiff wins.

4. Plaintiff states, "This is a case of blatant and obvious fraud." [22] As to the contingent nature of the original subscription, at one place in the paper record the controlling stockholder of plaintiff Dauphin would appear to be aware of the separate oral agreement, and in another place he "has since denied any

---

15. Defendants' (Sentinel and Lavino) Brief, p. 9.

16. Ibid., p. 10.

17. Fosnocht Aff., Ex. A; Plaintiff's Brief, p. 14.

18. Plaintiff's Brief, pp. 16, 30.

19. Plaintiff asserts jurisdiction under Sec. 27 of the 1934 Act, 15 U.S.C.A. § 78aa, and Sec. 22(a) of the 1933 Act, 15 U.S.C.A. § 7v(a).

20. Plaintiff's Brief, p. 12.

21. Ibid. p. 13.

22. Plaintiff's Reply Brief, p. 8.

such knowledge under oath." [23] The disposition of the issue as to whether there was an oral agreement manifestly would cut much of the heart out of this case; and, regardless of the oral agreement, whether plaintiff was the victim of misrepresentations and a scheme to defraud is the other issue. These issues can be evaluated neither by lawyers' briefs nor by participants' conflicting affidavits and depositions. As I suggested recently,[24] such issues can be critically analyzed for evaluation only by consideration of testimony of witnesses under oath, subject to cross-examination, and bound by rules of evidence as to what these parties did intend, what their negotiations did encompass and whether there was, or was not, an oral agreement, and whether plaintiff was the victim of a scheme to defraud.

Both plaintiff's and defendants Lavino's and Sentinel's motions for summary judgment are denied.

## II.

█ The remaining defendant, James J. Davis, died since this litigation started, but a motion on his behalf has been filed to dismiss for lack of venue and jurisdiction over an indispensable party. No action has been taken under FR 25 for a substitution, but it is assumed that this formalism will occur. In view of the related and sequential nature of the transactions complained of here, i. e., the deposit of the $200,000 note in Delaware, on Davis' advice and suggestions, and its return as a result of Davis' participation in the alleged scheme to defraud, it is sufficient to make the venue of this district proper as to him, as well as to the two other defendants, in view of allegations of their activities concerning the scheme and since Dauphin had its business and commercial nexus here in Delaware. Dauphin Corporation v. Davis, D.C.Del., 201 F.Supp. 470; Dauphin Corporation v. Redwall Corporation et al. [Davis], D.C.Del., 201 F.Supp. 466. See, too, 3 Loss, Securities Regulations, pp.

2007–2011; Connecticut Mutual Life Ins. Co., v. Shields, S.D.N.Y., 131 F.Supp. 363–364; Blau v. Lamb, S.D.N.Y., 20 F.R.D. 411; Goldstein v. Grosbeck, 2 Cir., 142 F.2d 422.

Defendant Davis' motion to dismiss is denied.

Submit orders.

23. Hofmann Affl, ¶ 5, 8; per contra, ¶ P 9, and Hofmann Deposition, Tr. p. 97.

24. Stern & Co. v. State Loan and Finance Corporation, D.C.Del., 205 F.Supp. 702.