**DETERJET CORPORATION, Plaintiff,**

v.

**UNITED AIRCRAFT CORPORATION (HAMILTON STANDARD DIVISION), Defendant.**

**Civ. A. No. 2324.**

United States District Court
D. Delaware.
Nov. 26, 1962.

Samuel R. Russell (Morford, Young & Conaway), Wilmington, Del., Marvin

Katz, and Harry Norman Ball, Philadelphia, Pa., for plaintiff.

Stephen E. Hamilton, Jr. (Richards, Layton & Finger), Wilmington, Del., and Robert L. Clare, Jr. (Shearman & Sterling), New York City, for defendant.

Plaintiff Deterjet Corporation charges defendant United Aircraft Corporation (Hamilton Standard Division) has violated and continues to violate §§ 1 and 2 of the Sherman Anti-Trust Act.[1] Defendant moves for summary judgment.

Plaintiff says he [it] [2] has invented a device for overcoming alleged "inadequacies" in defendant's "customary governor device," used to regulate the operation of aircraft propellers, the so-called inadequacies consisting of the purported failure of these devices to feather [3] aircraft propellers during emergencies. Defendant is said to monopolize and control practically all of the market of manufacturing and distributing of the customary governor device and is alleged to have conspired with co-conspirators (though not, here, named as defendants) [Pan American World Airways, Inc., Woodward Governor Company, Curtiss Wright Corporation, World Airline Pilots Association, Pratt & Whitney Company, and Douglas Aircraft Corporation] for the purpose of preventing plaintiff from marketing or developing its device and thus permitting defendant to maintain and continue its alleged illegal monopoly.[4] Among specific acts charged by plaintiff against defendant are threats of unjustified patent litigation; attempts to hinder and delay plaintiff from securing approval of plaintiff's device by the Civil Aeronautics Administration and other agencies of the Federal Government; circulation of false and defamatory rumors and propaganda as to plaintiff's financial status; refusal to sell parts to plaintiff required for the manufacture and development of its device; refusal to test or buy its device; and, refusal to inform plaintiff of confidential information secured from plaintiff as to its device.[5] Plaintiff says defendant's acts have resulted, *inter alia*, in boycott, of its products, exclusion from the manufacturing and distributing market of its device with resultant loss of profits. Plaintiff prays for injunctive and monetary relief.

Defendant's motion for summary judgment claims: 1. It does not enjoy an illegal monopoly; 2. no causal relationship exists between the alleged antitrust violations of defendant and plaintiff's alleged injury; and, 3. plaintiff had no "business" or "property" entitling it to the protective sanctions of the antitrust laws.

LEAHY, Senior District Judge.

1. The standards for disposition of the summary judgment motion have recently been discussed by the Supreme Court [6] and this Court.[7] A mo-

---

1. 15 U.S.C. §§ 1, 2.

2. Eugene L. Grindle was the sole stockholder and president of Deterjet Corporation at date of incorporation. Although Grindle is not a separate plaintiff in this action, the relationship between him and the corporation is apparently so close as to approach union. No distinction, therefore, will be made between claims of Deterjet and those of Grindle.

3. Webster's New Collegiate Dictionary defines the term "to feather": "To rotate (propeller blades) about their span axes into such positions that, with the power off, there is no tendency for the propeller to rotate, or 'windmill'. When fully feathered, the propeller remains stationary and produces a minimum of aerodynamic drag."

4. Complaint, ¶¶ 4, 5, 6, 7, 8, 9, 12, 13, 14 and 15.

5. Complaint, ¶ 14.

6. "Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case 'show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.Rules Civ. Proc. [28 U.S.C.A.]. This rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * [and where] no genuine issue remains for trial

7. See note 7 on page 350.

tion for summary judgment, when first introduced as a procedural technique to facilitate a speedy determination of litigation, is now, after pragmatic trial and error experience, growing less in favor. It may be granted where it is certain no relevant unsolved issue of fact requires determination at trial and there remains only a question of law;[8] it will not be granted, unless "it is quite clear what the truth is." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967. [Cited in Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed. 2d 458.]

■ Consideration of the present motion begins with the judicial scales weighed against defendant. This case involves a conspiracy charge made pursuant to the anti-trust laws and "conspiracy raises a question of fact or, at least, a question of factual inference. As such, it may not be properly disposed of on summary judgment"[9]—unless the conspiracy is impossible, as a matter of law, or a plaintiff has by his own words in his complaint or affidavit willed the alleged conspiracy out of existence. Too, "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.' "[10]

Thus, though the summary judgment mechanism has not been banished to some legal Siberia, nevertheless any anti-trust defendant has a rough road of judicial presumptions to overcome to bring about its acceptance.

■ 2. Defendant United Aircraft says plaintiff's claims are against its natural monopoly and of its "own particular and unique product and not in * * * a generic-type product."[11] Defendant concedes it is the only company in the United States which produces a hydromatic propeller system, alleged defects in the governor of which plaintiff claims his device will remedy; but defendant points out this is the same unexceptionable and clear legal monopoly every manufacturer has in its own product. DuPont is cited:

"* * * A retail seller may have in one sense a monopoly on certain trade because of location, as an isolated country store or filling station, or because no one else makes a product of just the quality or attractiveness of his product, as for example in cigarettes. Thus one can theorize that we have a monopolistic competition in every nonstandardized commodity with each manufacturer having power over the price and production of his own product. However, this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes

---

* * * [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.' Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 [64 S.Ct. 724, 88 L.Ed. 967] (1944)." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L. Ed.2d 458.

7. Bowman & Sons, Inc. v. Schenley Distillers, Inc., D.C.Del., 190 F.Supp. 586; Brady v. Trans World Airlines, Inc., D.C. Del., 196 F.Supp. 504, 505; Stern & Co. v. State Loan & Finance Corp., D.C.

Del., 205 F.Supp. 702, 707; Dauphin Corp. v. Sentinel Alarm Corp., D.C.Del., 206 F.Supp. 432.

8. This Court recently granted summary judgment in such a case. See, Altemus v. Pennsylvania Railroad Co., D.C.Del., 210 F.Supp. 834.

9. Dovberg v. Dow Chemical Co., D.C.E.D. Pa., 195 F.Supp. 337, 340.

10. Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458.

11. Defendant's Brief, p. 24.

an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product."[12]

Yet, defendant's motion for summary judgment must be denied as a result of the very reasoning of DuPont, supra. Obviously, the nature of the competitive market itself is in dispute here, and the summary judgment mechanism is ill used to make that determination, especially where the parties are still in the midst of pre-trial discovery.[13] Defendant argues a manufacturer of propeller systems or their governing devices can hardly be held liable for monopolizing its own product; and plaintiff argues the only manufacturer of hydromatic propeller systems and governors for hydromatic propeller systems may very well monopolize that market. No determination of these vital questions can be made on the fragmentary paper record thus far revealed in this litigation;[14] on the contrary, it is neither "quite clear what the truth is," nor what the real market is, I want to hear the witnesses talk.

3. Defendant United Aircraft contends no causal relationship exists between its alleged acts and alleged damages to plaintiff Deterjet. The argument is three-pronged: a) Assuming, *arguendo*, the existence of monopoly power, it could only have had a " 'salutory' effect on plaintiff's prospective business, its business being to manufacture devices to be employed in conjunction with such governors; "[15] b) deposition-testimony of plaintiff's officers indicate the direct or proximate cause of plaintiff's alleged damages were failure to receive orders from airlines and delay of the Civil Aeronautics Administration in granting certification for plaintiff's device—neither of which can be attributed to any illegal act of defendant; and, c) other charges against defendant are irrelevant to alleged damages suffered.

The private litigant in an antitrust civil suit has a different and more stringent burden than does the Attorney General. "No private litigant has the right to take upon himself the role of the Attorney General in the enforcement of the antitrust laws. If such was fact, the legal life of the judiciary would be intolerable. It is the Attorney General who applies for enforcement of the antitrust laws in the public interest. When the private litigant sues, he must establish his right to redress *for the particular wrong done to him*." Zenith Radio Corp. v. Radio Corp. of America, D.C. Del., 106 F.Supp. 561, 576.

Here, plaintiff claims the intent and effect of the monopoly alleged was to exclude him from the market place. Manifestly, whatever the cause, plaintiff is *now* out of any market place.[16] And thus it can hardly be successfully maintained by defendant, *on this motion*, that the monopoly, if it did exist, was either benevolent or beneficial. It is no comfort to an anti-trust plaintiff (and no defense for an anti-trust defendant) that the monopolist who has driven him from the market place was the party for whom plaintiff's product was produced. If

---

12. United States v. E. I. duPont de Nemours & Co., 351 U.S. 377, 392–393, 76 S.Ct. 994, 1006, 100 L.Ed. 1264.

13. This motion was made in the midst of pre-trial discovery procedures. Defendant's answer to plaintiff's Interrogatory No. 7, for example, identifies 38 of its employees and 22 persons who have yet to be examined by defendant; its answer to plaintiff's Interrogatory No. 8 identifies 121 documents yet to be examined by plaintiff; its answer to Interrogatory No. 14 identifies 18 other such documents; its answer to Interrogatory No. 26 identifies 39 other pieces of correspondence; its answer to plaintiff's supplementary Interrogatory No. 8 identifies upwards of 100 reports of incidents which plaintiff contends evidences defendant's monopolistic practices. Other witnesses have yet to be examined by plaintiff.

14. See, for example, the detailed factual analysis required in United States v. E. I. DuPont De Nemours & Co., D.C.Del., 118 F.Supp. 41, aff'd, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264.

15. Defendant's Brief, p. 33.

16. Grindle Deposition, pp. 339–341; Defendant's Brief, p. 12.

plaintiff's contentions are correct, this is precisely what has happened here. In any event, the facts that brought about the demise of plaintiff's business cannot be determined by this limited and wholly paper record.

Deposition-testimony of Deterjet's Grindle states CAA failure to approve Deterjet's device "killed" the business.[17] Defendant thereupon argues Deterjet concedes its case because the recent Supreme Court holding in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 held damages brought about by governmental action, whether or not that action was solicited by an antitrust defendant, is not recompensable.

The question is a close one, but I am unwilling to take one paragraph from plaintiff's lengthy deposition in which— as attorneys or private citizens are sometimes wont to do—Grindle may have verbally overstated himself, and halt these proceedings. Deposition-testimony of persons unskilled in legal arts cannot be judged as strictly as pleadings prepared by an attorney or testimony viewed by a judge.[18] At other points in Grindle's deposition, for example, reference is made to alleged threats of defendant's officers to force Deterjet out of business,[19] threats which plaintiff claims were put into effect by a wide range of actions.[20] CAA inaction may have been the decisive cause of the death of plaintiff's business, but I cannot dismiss this action at this time in these proceedings on the basis of that possibility.[21] These same considerations are applicable to plaintiff's charges with respect to the cause of airline refusal to purchase its device. The matter is a factual one and cannot be determined at this time.

Other contentions of plaintiff are relevant to the charges made here and they, too, cannot be summarily judged. An example will suffice. Plaintiff charges Pan American World Airways, Inc., made deliberately false evaluations of test data on plaintiff's device and eliminated from its evaluation report unfavorable facts dealing with the integrity of defendant's device [22] because "they wanted the record to show that they were buying the Hamilton Standard device because it was a satisfactory solution to the problem, which * * * the record, the true record, would not reveal." [23] Defendant United Aircraft says Pan American had decided it was "prudent business-wise" to rely on defendant in matters pertaining to defendant's hydromatic propeller system [24] and claims, again, plaintiff's officers admitted in points in depositions that two interpretations could be made of the test data. But "such issues can be evaluated neither by lawyer's briefs nor by participants' affidavits. They can be critically analyzed for evaluation only by consideration of testimony of witnesses under oath, subject to cross exam-

17. "Q. Did this hurt Deterjet in any way, the fact that the CAA delayed in issuing the certification?
   A. It killed us.
   Q. It killed you?
   A. It killed Deterjet Corporation." [Grindle Dep. p. 330].

18. Compare, Securities and Exchange Comm. v. Glass Marine Industries, Inc., D.C.Del., 208 F.Supp. 727, 729–731.

19. See, Hanafin Deposition, p. 83, 84; Grindle Deposition, p. 171–175, 283–285.

20. See p. 3, supra.

21. The difficulty in giving much credit to one phrase taken from a deposition is yet another sign of the difficulty any defendant has in utilizing the summary judgment mechanism. Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 580, and subsequent cases have limited evidence a trial court may look to in considering a defendant's summary judgment motion to plaintiff's pleadings, plaintiff's affidavit, plaintiff's depositions, and the like. But as depositions themselves are of limited reliability, summary judgment more and more may be limited to ill-pleaded or patently unfounded cases.

22. Complaint ¶ 14(h); Plaintiff's Brief, p. 22.

23. Grindle Deposition, p. 234.

24. Defendant's Brief, p. 59; Defendant's Brief, p. 37–42.

ination and bound by rules of evidence "[25] as to what these parties did and what they meant. Summary judgment, under such circumstances, is inappropriate.

4. Defendant's last claim is plaintiff had no "business" or "property" entitling it to the protection of the anti-trust Acts. That plaintiff Deterjet was a corporate fledgling, which had barely taken steps to enter the market place before the alleged monopoly took its toll, is not dispositive of the issue. Judge STEEL, sitting in the Eastern District of Pennsylvania, recently summed up the "standing" requirement of the Sherman-Clayton Act as follows:

"Section 4 of the Clayton Act authorizes the recovery of treble damages by any person who is injured in his 'business' or 'property' by reason of anything forbidden by the anti-trust laws. Defendants contend that since plaintiff never actually engaged in business, it had no business within the intendment of Section 4. Defendant's argument necessarily presupposes that when Congress authorized treble damage suits it meant to distinguish between the rights of persons who are put out of business and the rights of persons who are kept out of business by a conspiracy. It is unreasonable to suppose that such a distinction was intended by Congress. The purpose of the anti-trust laws is to

promote competition and to prevent its restraint. This purpose is no less thwarted when a person who intends and is prepared to embark in trade is stopped at the outset, than it is when a going business is brought to a standstill. It is as unlawful to prevent a person from engaging in business as it is to drive him out of business. * * * "[26]

In the present case, Dr. Pickels for plaintiff stated that in addition to his initial investment of $8,000 [27] he was ready and able to put an additional $300,000 of cash into plaintiff corporation.[28] Mr. Hanafin testified that in addition to his initial investment,[29] he was ready and able to invest an additional $250,000 in the enterprise and to arrange financing of an additional $100,000.[30] In addition, deposition-testimony indicates the business already had facilities to produce the device, including a leased building, and necessary machinery, and that arrangements were complete to go into production.[31] It would therefore seem plaintiff falls well within the requirement of a "business" or "property" required by the statute.

5. A specific claim of the present defendant with respect to the charges set out in plaintiff's complaint deserves separate consideration; one alleged conspirator with defendant is the "Pratt and Whitney Company." [32] Pratt & Whitney is apparently not a separate company but an unincorporated division

25. Stern & Co. v. State Loan and Finance Corp., D.C.Del., 205 F.Supp. 702, 709.

26. Delaware Valley Marine Supply Co. v. American Tobacco Co., E.D.Pa., 184 F. Supp. 440, 443, aff'd, 3 Cir., 297 F.2d 199; cert den. 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed.2d 843; Cf. Triangle Conduit and Cable Co. v. National Electric Products Corp., 3 Cir., 152 F.2d 398; William Goldman Theatres, Inc. v. Loew's, Inc., E.D.Pa., 69 F.Supp. 103, aff'd, 3 Cir., 164 F.2d 1021, cert. den. 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742.

27. Pickels Deposition, p. 30.

28. Ibid. p. 32, 37.

29. The defendant makes no direct argument that the meagerness of the money

orginally invested in the business places plaintiff outside the protective shield of the statute. Defendant's Reply Brief, p. 31. "Monopoly can as surely thrive by the elimination of * * * small businessmen, one at a time, as it can by driving them out in large groups." Klor's v. Broadway-Hale Stores, 359 U.S. 207, 213, 79 S.Ct. 705, 710, 3 L.Ed.2d 741; Cf. Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358.

30. Hanafin Deposition, p. 114, 115.

31. Hanafin Deposition, p. 76, 80, 81; Grindle Deposition, p. 144, 145, 345.

32. Complaint, ¶¶ 14(d), 14(h).

of defendant. As defendant United Aircraft cannot be guilty of conspiring with itself,[33] summary judgment as to Pratt & Whitney will be granted as to this charge contained in the complaint.

6. All other prayers for summary judgment will be denied. An orthodox trial to this Court must be had.

33. Timken Roller Bearing Co. v. United States, 341 U.S. 593, 606, 71 S.Ct. 971, 95 L.Ed. 1199; Mackey v. Sears, Roebuck & Co., 7 Cir., 237 F.2d 869, 873; Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 200 F.2d 911, 914; Union Pacific Coal Co. v. United States, 8 Cir., 173 F. 737; Lawlor v. Loewe, 2 Cir., 209 F. 721, aff'd 235 U.S. 522, 35 S.Ct. 170, 59 L.Ed. 341; United States v. Reading Co., 3 Cir., 183 F. 427, modified on other grounds, 226 U.S. 324, 33 S.Ct. 90, 57 L.Ed. 243; United States v. American Naval Stores Co., 5 Cir., 172 F. 455. Cf. Paramount Pictures v. United Motion Picture Theatre Owners, 3 Cir., 93 F.2d 714.