**CITIZENS' ACCEPTANCE CORPORA-TION, Plaintiff,**

v.

**NEW AMSTERDAM CASUALTY COM-PANY, Defendant.**

**Civ. A. No. 2440.**

United States District Court
D. Delaware.
May 9, 1963.

---

Robert W. Tunnell, Tunnell & Raysor, Georgetown, Del., for plaintiff.

F. Alton Tybout, Prickett, Prickett & Tybout, Wilmington, Del., for defendant.

LEAHY, Senior District Judge.

■ 1. This court, pursuant to dictates of Supreme Court and Third Circuit cases, has recently expressed its limited function in considering motions for summary judgment.[1] The motion "when first introduced as a procedural technique to facilitate a speedy determination of litigation, is now, after pragmatic trial and error experience, growing less in favor. It may be granted where it is certain no relevant unsolved issue of fact requires determination at trial and there remains only a question of law; it will not be granted, unless 'it is quite clear what the truth is.' Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967.".[2]

■■ 2. It is an accepted axiom of insurance law that fidelity bonds indemnifying employers against dishonest acts of their employees are to be construed broadly.[3] Equally axiomatically, fidelity bonds may not be read so broadly as to convert acts of negligence, however gross, into those of dishonesty. For summary judgment to be granted to the plaintiff at this pre-trial stage of these proceedings, this court must be convinced that, taking all factual inferences favorable to the defendant, plaintiff must, as a matter of law, prevail.

■ 3. Delaware state courts have not yet spoken on the meaning of "dishonesty" within the context of fidelity bonds. Dictionaries, "last resort of the baffled judge",[4] are of little assistance. Neighboring state courts have spoken— and are in conflict. The New Jersey Supreme Court in a 4–3 decision in a legal situation remarkably similar to the present one held that an inspector who did not inspect and who misrepresented to his employers that he had inspected, had been dishonest as a matter of law.

"What Harrison did was done wilfully and was continued over a period of four months. On 92 occasions he certified that he had made personal inspections when he knew that such certifications were false and that his employer, being unaware of their falsity, would disburse large sums in reliance thereon. He deliberately failed to tell his employer that he was not making personal inspections because he was afraid he would lose his job; and this though he knew that the very

1. See, Deterjet Corp. v. United Aircraft Corp., D.C.Del., 211 F.Supp. 348, and cases cited therein.

2. 211 F.Supp. 349, 350, citing Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458.

3. 9 Appleman, Insurance Law and Practice, 566 (1943); 5 Couch, Cyclopedia of Insurance Law, 4353 (1929).

4. Jackson, J., Jordan v. DeGeorge, 341 U.S. 223, 234, 71 S.Ct. 703, 95 L.Ed. 886.

purpose for which he was hired as inspector was to make personal inspections and to issue his certifications on the basis thereof. *Under the admitted facts he palpably was faithless to his trust and deceived his employer; it matters not that his conscious deceptions may not have been accompanied by intent to cause actual monetary loss to his employer and may have been induced by motives of personal comfort or convenience rather than personal profit or gain for, in any event, his conduct was morally as well as legally wrongful.* In the light of all the foregoing we are convinced that Harrison's misconduct must fairly be held to be the type of action which fell within the reasonable and proper coverage expectations of the parties to the fidelity bond issued by the defendant to the plaintiff." [5] (Italics added).

The Pennsylvania Supreme Court, on facts even closer to those presented here, has concluded otherwise:

"We must be guided by the terms of the bond itself * * * and, construing the clause in question, the acts of dishonesty and fraud which come within the meaning here disclosed are acts done for the purpose of harm or with a view to personal profit. The reports of Gregory, standing alone, were not sufficient to sustain the action. Oral evidence was necessary to show the circumstances under which reports were made. *They may have been the result of mistaken neglect or overconfidence in the dealer. Negligence, a mere dereliction in the terms of an employment, a misstatement not accompanied by a designed intent to defraud or to profit thereby, are not acts of dishonesty* or fraud such as are within the contemplation of this bond. To hold otherwise would impose a most unusual burden upon appellee, and one, we think, never contemplated by the contracting parties." [6] (Italics added).

4. The majority of courts that have defined "dishonesty" in context similar to the present have apparently leaned toward the position of the Pennsylvania Supreme Court and held that the question is one for a jury.[7] Justice Cardozo, while sitting as the Chief Judge of the New York Court of Appeals wrote what is by far the most frequently cited and quoted opinion in the area. In World Exchange Bank v. Commercial Casualty Insurance Company, 255 N.Y. 1, 173 N.E. 902, the New York Court ruled on the following situation: A depositor sought to draw money against various checks and drafts he had deposited; some had been genuine and others forged. The bank had a rule that payments were not to be made to a depositor without the approval of an officer until the deposited check had been collected. In violation of this order, a teller allowed the depositor to draw on his account. The bank, on sustaining a loss from the withdrawals, claimed the teller had been "dishonest" within the meaning of a fidelity bond. Justice Cardozo disagreed and held:

"We think the quality of the act is not so obvious and determinate as to exclude opposing inferences. * * * Criminal the act was not, unless done with criminal intent. * * * The presence of that intent is not, in the setting of the circumstances, an inference of law. The question is perhaps closer whether the act within the meaning of the

5. Mortgage Corporation of New Jersey v. Aetna Casualty & Surety Co., 19 N.J. 30, 115 A.2d 43, 48.

6. Universal Credit Co. v. United States Guarantee Co., 321 Pa. 209, 183 A. 806, 807.

7. See, "Acts or default of Officer or Employee Covered by Fidelity Bond or Insurance," 43 A.L.R. 984, 46 A.L.R. 977, 62 A.L.R. 415, 77 A.L.R. 863, 98 A.L.R. 1266.

policy must be said to be 'dishonest,' for dishonesty within such a contract may be something short of criminality. * * * *The appeal is to the mores rather than to the statutes. Dishonesty, unlike embezzlement or larceny, is not a term of art.* Even so, the measure of its meaning is not a standard of perfection, but an infirmity of purpose so opprobrious or furtive as to be fairly characterized as dishonest in the common speech of men. 'Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract.' * * * " [8] (Italics added).

I find Justice Cardozo's reasoning unanswerable—if applicable. Under most circumstances, a judge is no better able than a jury to determine what is "dishonest" as distinct from "illegal". Except in rare and all too difficult cases, a judge is not required to gauge public sentiment to make legal decisions; measuring mores is not within the peculiar competence of the judicial temperament.

Plaintiff argues, however, that World Exchange is distinguishable and that Justice Cardozo himself has led the way. For, Justice Cardozo stated at a later point in the opinion that "[a] different question might be here if payments against uncollected items had been forbidden always to all and every one, had been excluded altogether from the business of the bank." [9] Plaintiff claims O'Neal was totally bound to personally inspect, that his act was a radical departure from what he was hired to do, and that World Exchange must be taken as supporting its position that summary judgment should be granted.

5. I disagree. It is not clear to me that O'Neal's acts were necessarily so touched with anything beyond gross negligence of duty as to have been "dishonest". Dishonest they may have been,

but that a jury can determine. For whatever failures the jury system may have, one of its virtues is the capacity of juries to walk and speak in the shadowy legal area involving public mores. The mores may not be wise; but there is no reason to believe (and good reason to disbelieve) that a judge can discern them with any greater perspicacity than a jury.

Plaintiff's motion for summary judgment will be denied.