The FIRST NATIONAL BANK OF
WEST HAMLIN, West Hamlin, West
Virginia, Plaintiff,

v.

MARYLAND CASUALTY COMPANY,
a corporation, Defendant.

Civ. A. No. 2528.

United States District Court,
S. D. West Virginia,
Huntington Division.

Jan. 30, 1973.

R. A. Woodall, Hamlin, W. Va., Harry L. Hager, Huntington, W. Va., for plaintiff.

C. Robert Schaub, Jenkins, Schaub & Fenstermaker, Huntington, W. Va., for defendant.

CHRISTIE, Chief Judge:

This diversity case is presently before the Court on motion of plaintiff for partial summary judgment. It is asserted that, on the basis of the pleadings, affidavit and exhibits, and depositions filed and made a part of the record, the plaintiff is entitled to judgment with respect to the question of the liability of defendant to it under a Bankers Blanket Bond issued by defendant to plaintiff on October 24, 1964. The Court has carefully reviewed the record and finds the following facts to be established without dispute.

## STATEMENT OF FACTS

On October 24, 1964, by means of a Bankers Blanket Bond, defendant undertook and agreed to indemnify and hold harmless the plaintiff, a national banking association, from, among other things, "any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of Property through any such act of any of the Employees." Subsequent to the issuance of the bond, in the early part of 1965, plaintiff entered into an arrangement with Cline Priestly, doing business as Hamlin Motor Company, and American Motors Corporation, whereby plaintiff undertook to finance or floor-plan the purchase of new automobiles by Hamlin Motor Company from American Motors Corporation. Pursuant to this arrangement, plaintiff agreed to accept sight drafts drawn on the plaintiff bank by American Motors for the purchase price of automobiles to be shipped to Hamlin Motor Company. Upon receipt of the automobiles, plaintiff would honor the sight drafts and at the same time would take a promissory note and trust receipt for the amount of the purchase price from Hamlin Motor Company. When the automobile subject to the note and trust receipt was sold, the proceeds of the sale were to be used to pay off the note, thereby releasing the bank's security interest.

Because of loan limitations imposed under national banking laws, plaintiff

was unable to finance all of the cars purchased by Hamlin Motor Company from American Motors, and, as a consequence, plaintiff requested The First Huntington National Bank to purchase some of the promissory notes together with the trust receipts. The First Huntington National Bank agreed to purchase such notes "without recourse," however, as a condition of its acceptance, the Huntington bank required plaintiff bank to agree to check the actual location of the automobiles covered by the notes in order to make certain that the automobiles were physically present at Hamlin Motor Company and had not been sold out of trust. Plaintiff was further required to make all collections and police, safeguard, and otherwise supervise the floor-plan arrangement. Plaintiff agreed to the conditions imposed by The First Huntington National Bank and, on that basis, the latter bank purchased a number of promissory notes of Hamlin Motor Company from plaintiff.

In October of 1965, plaintiff employed one William R. Purvis as an assistant cashier and delegated to him the responsibility for checking and supervising the floor-plan arrangement of Hamlin Motor Company. As a part of this responsibility, Mr. Purvis, who was required to visit the premises of Hamlin Motor Company periodically, prepared reports for plaintiff and for The First Huntington National Bank listing the automobiles, by year, make, and serial number, which he found present on such premises. On December 14, 1966; January 20, 1967; and May 31, 1967, Mr. Purvis prepared reports listing a number of automobiles which he indicated were present on the premises of Hamlin Motor Company on the dates given. Mr. Purvis left plaintiff's employment in July of 1967. On July 15, 1967, Alben R. DuVall, Executive Vice-President and Cashier of plaintiff bank, checked the floor-plan inventory of Hamlin Motor Company and discovered that a number of automobiles, previously certified as being there, were missing from the premises of said Motor Company. A subsequent investigation established that titles to the missing automobiles had been transferred by Hamlin Motor Company to various individuals prior to the dates on which Purvis, by his reports, had indicated that the automobiles were on the premises of the Motor Company. Among the automobiles so transferred was one transferred to Purvis, himself, on October 19, 1966. On December 14, 1966, nearly a month after the title to this vehicle had been transferred to Purvis, he (Purvis) stated in a report to The First Huntington National Bank that this particular automobile, along with others, was still on the premises of Hamlin Motor Company.

An involuntary bankruptcy petition was filed against Cline Priestly, doing business as Hamlin Motor Company, on November 16, 1967. On April 17, 1968, Cline Priestly was adjudged a bankrupt and his assets were later sold for a sum which was insufficient to pay his outstanding obligations, including those to plaintiff and The First Huntington National Bank. Thereafter, The First Huntington National Bank instituted suit against plaintiff in the Circuit Court of Lincoln County, West Virginia, asserting a breach of contract and alleging that plaintiff had failed to properly police the floor-plan arrangement and had furnished check lists which falsely certified that automobiles were present on the premises of the Hamlin Motor Company when in fact such automobiles were not present. By an order entered April 1, 1969, the said state court, on motion for summary judgment, entered judgment in favor of The First Huntington National Bank in the amount of $18,750.30, together with interest and costs. That court based its decision upon a finding that the Huntington bank "had lost the funds stated in the complaint as the result of the fraudulent and dishonest acts of one of the defendant's [Bank of Hamlin] employees in connection with the performance of the contract between plaintiff and defendant."

## APPLICABLE PRINCIPLES OF LAW

### (1) *Genuine Issues as to Material Fact:*

◼ In defending against plaintiff's motion for summary judgment in this court, the defendant first asserts that, though the facts of this case may not be in dispute, nevertheless, conflicting inferences, some favorable to it, may be drawn from the undisputed facts and for this reason a jury question is presented necessitating a denial of the motion. It is true, of course, that on motion for summary judgment, the court views the evidence in the light most favorable to the party opposing the motion and gives to that party the benefit of all favorable inferences that may *reasonably* be drawn from the evidence. United States v. Diebold, Incorporated, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). It is also true, however, that a determination of the existence of a genuine issue of material fact, either with respect to subsidiary facts or the inferences of ultimate facts to be drawn from such facts, "must rest upon something more tangible than mere speculation." Chesapeake and Ohio Railway Company v. International Harvester Company, 272 F.2d 139 (7th Cir. 1959).

In the instant case, plaintiff has established that title to automobiles subject to security interests of the plaintiff and The First Huntington National Bank was transferred out of trust, that, subsequent to the date of transfer of title to these automobiles, William Purvis, an employee of plaintiff, reported that the automobiles were present on the premises of Hamlin Motor Company when in fact they were not there, and, finally, that among the automobiles so transferred was one which went to Purvis for a consideration which was less than the price paid by the dealer to the manufacturer. In the face of this evidence, defendant, without offering any evidence in support of its assertions, states that it might be inferred (1) "that the automobiles in question were physically present at Hamlin Motor Company at the time the certification was made," (2) "that plaintiff's employee negligently did his duties, and did not actually check on the automobiles," or, as plaintiff contends, (3) "that the listing was willfully and dishonestly done." Only the last of these three possibilities, of course, would bring the loss within the coverage of the Bankers Blanket Bond.

With regard to the defendant's first assertion, that it would be reasonable to infer that the automobiles were physically present at Hamlin Motor Company at the time the certification was made, the Court finds such assertion to be completely contrary to the established facts. Such facts show without contradiction that the automobiles in question were sold, that in most cases the purchase price paid by the buyers included used automobiles traded in, and that Purvis certified that these automobiles were present on dates when, in fact, they had been sold out of trust. There is simply no evidence, nor any reasonable basis in the evidence presented, upon which to base the inference contended for by defendant to the effect that the cars were present when the certifications were made. To the contrary, the sole and inescapable inference from the evidence presented is that the automobiles were not in fact on the premises of Hamlin Motor Company on the dates certified by Purvis.

We look now to the defendant's second assertion, that it would be reasonable to infer that Purvis was merely negligent in performing his duties in that he did not actually check on the automobiles. Although the fact that Purvis purchased one of the automobiles in question certainly mitigates defendant's contention, nevertheless, even if we assume that he (Purvis) was unaware of the fact that the automobiles were sold out of trust— that he simply failed to check on the presence or the absence of the automobiles—the fact remains undisputed in the evidence that Purvis did certify that the automobiles were on the premises of

Hamlin Motor Company when, in fact, they were not there.

■ As previously noted, in asserting liability on the part of the defendant insurance company, plaintiff relies on that clause in the Bankers Blanket Bond which provides that the defendant will indemnify and hold plaintiff harmless from any loss sustained through any dishonest, fraudulent or criminal act of any of plaintiff's employees. Defendant, in asserting that a possible inference from the facts in this case is that Purvis negligently failed to check on the presence of the automobiles, contends that the evidence, when viewed in this light, precludes summary judgment since the policy does not cover loss resulting from negligence on the part of the plaintiff's employees. The issue to be resolved, therefore, is whether Purvis' actions can be characterized as "negligent." Our review of the applicable principles of law convinces us that the undisputed facts of the present case establish that the conduct of Purvis was, in truth, fraudulent and dishonest, thus precluding it from being characterized as mere negligence as contended for by the defendant.

■ The substantive law of West Virginia applies in this diversity case, Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), however, a careful review of West Virginia statutes and case law has failed to uncover any statute or reported case involving the particular questions at issue in this litigation. Accordingly, in determining the applicable law, the Court has attempted to apply those legal principles which, in our opinion, the state's highest court would apply if this case were before it for decision. James v. United States, 467 F.2d 832 (4th Cir. 1972); Panagopoulous v. Martin, 295 F.Supp. 220 (S.D.W.Va.1969). We begin our analysis of the issues with the well-established rule that fidelity bonds indemnifying employers against dishonest or fraudulent acts of their employees are to be broadly construed. 9 Apple-

man, Insurance Law and Practice, 566 (1943). The meaning of fraud and dishonesty, as used in such bonds, extends beyond acts which would be criminal and is "to be given a broad signification, and taken most strongly against the surety company." Citizens' Trust & Guaranty Co. of West Virginia v. Globe & Rutgers Fire Ins. Co., 229 F. 326, 330 (4th Cir. 1915); Brandon v. Holman, 41 F.2d 586 (4th Cir. 1930). As was stated by the Court in Citizens State Bank v. Transamerica Insurance Company, 452 F.2d 199, 203 (7th Cir. 1971), "Misrepresentation of facts and deliberate deception by pretense and stealth constitute dishonest and fraudulent conduct." At the very least, the evidence before the Court establishes that Purvis made representations of fact purportedly based upon personal knowledge when, giving him the benefit of the doubt, he was uninformed of the truth or falsity of the representations. We find ourselves in accord with the views expressed by the Court in The Mortgage Corporation of New Jersey v. The Aetna Casualty & Surety Company, 19 N.J. 30, 115 A.2d 43 (Sup.Ct. of N.J. 1955), a case in which an inspector made certification to his employer purportedly based upon personal knowledge when in fact the inspector, who was responsible for checking the progress on the construction of homes, had never personally viewed the premises. In finding such conduct, resulting in a loss to his employer, within the coverage of the fidelity clause of the Brokers Blanket Bond which protected against losses resulting from dishonest or fraudulent acts of employees, the Court made the following remarks:

"Under the admitted facts he [the inspector] palpably was faithless to his trust and deceived his employer; it matters not that his conscious deceptions may not have been accompanied by intent to cause actual monetary loss to his employer and may have been induced by motives of personal comfort or convenience rather than personal profit or gain for, in

any event, his conduct was morally as well as legally wrongful. In the light of all the foregoing we are convinced that Harrison's misconduct must fairly be held to be the type of action which fell within the reasonable and proper coverage expectations of the parties to the fidelity bond issued by the defendant to the plaintiff."

On the basis of the undisputed evidence before the Court and the case law construing the term "dishonesty," as used in fidelity bonds, it is clear that only the third of the three possible inferences previously referred to, i. e., the dishonest conduct of Purvis in certifying the presence of the automobiles on the premises of Hamlin Motor Company which resulted in financial loss to the plaintiff, as the plaintiff contends, has any rational support in the evidence.

We now pass to the question of whether such loss is covered by the terms of the fidelity bond involved in this litigation.

(2) *Coverage of Fidelity Policy:*

Conceding that dishonesty on the part of plaintiff's employee may be established by the evidence, defendant next contends that the policy does not cover this particular *type* of loss. Defendant argues, without citation of authority or particularizing any of the various clauses of the bond, that since the loss involved was collateral for a loan and since such collateral was not, when lost, in the possession of plaintiff but in the possession of plaintiff's debtor, Hamlin Motor Company, it is not a covered loss under the provisions of the bond. The clause at issue, however, simply provides that defendant will indemnify and hold plaintiff harmless from "any loss through any dishonest . . . act of any of the Employees, committed anywhere . . . .," and nowhere is there any limitation or condition with respect to the location of the loss. The bond does contain certain conditions, exceptions and limitations with regard to coverage of losses arising out of situations other than those involving dishonesty of em-

ployees, however, in its coverage of losses resulting from dishonest, fraudulent or criminal acts of employees the policy utilizes general terms importing broad coverage of "any loss" committed anywhere.

■ Courts which have been called upon to determine the question of coverage under fidelity bonds involving circumstances almost identical to those involved in the present case, though finding factual issues present with regard to the question of whether or not the employee had acted "dishonestly," have not questioned the fact that the loss was of the type covered by the terms of the fidelity bond, the only question being whether the employee acted dishonestly or negligently in making false certifications. See Citizens' Acceptance Corporation v. New Amsterdam Casualty Company, 32 F.R.D. 600 (D.C.Del. 1963); Universal Credit Company v. United States Guarantee Co., 321 Pa. 209, 183 A. 806 (Sup.Ct. of Pa., 1936). As previously noted, this Court, in agreement with the views expressed by the Court in The Mortgage Corporation of New Jersey v. The Aetna Casualty & Surety Company, supra, finds the conduct of the employee Purvis dishonest, as a matter of law. Accordingly, applying the plain language of the fidelity clause of the bond, it is clear that plaintiff has incurred loss of the type covered by the terms of the bond.

(3) *Loss on Notes Sold to The First Huntington National Bank:*

■ Finally, defendant asserts that the liability of plaintiff to The First Huntington National Bank is not a loss within the coverage of the bond. Defendant further asserts that because the purchase of the notes and security interests by the Huntington bank was "without recourse," the plaintiff would not be responsible to the Huntington bank for the loss and, consequently, defendant would not be liable to plaintiff. Two distinct questions are thus raised by these contentions. First, it must be determined whether the judgment ren-

dered in the state court is binding on the defendant in this action. Second, it must be determined whether such judgment and plaintiff's consequent liability is of the type covered or insured against by the bond. Answering the second question first, it is clear that the obligation of plaintiff to the Huntington bank, arising out of the judgment rendered in the state court, is covered by the terms of the bond. That court based its holding upon a specific finding that the Huntington bank incurred the loss on the notes "as a result of the fraudulent and dishonest acts" of one of plaintiff's employees. Thus the liability of plaintiff to the Huntington bank is clearly a liability for loss occurring "through any dishonest, fraudulent or criminal act" of an employee of plaintiff for which the defendant has agreed, by specific language in the bond, to indemnify plaintiff. See Hooker v. New Amsterdam Casualty Co., 33 F.Supp. 672 (W.D.Ky. 1940).

█ We will now consider whether or not the judgment of the state court is binding on defendant in this action. Despite defendant's assertion that the notes were "without recourse," under well-established principles regarding the effect of judgments, it is held that where an indemnitor has been given notice and an opportunity to defend a suit against an indemnitee, the judgment rendered against the indemnitee is conclusive on the indemnitor with respect to the question of whether or not the indemnitee was liable to the plaintiff in that action. Aetna Life Ins. Co. of Hartford, Conn. v. Maxwell, 89 F.2d 988 (4th Cir. 1937). Failure to give such notice and an opportunity to defend to an indemnitor, however, results in very different consequences. As pointed out by the Court in Jennings v. United States, 374 F.2d 983, 985 (4th Cir. 1967),

"The concept that notice plus an opportunity to defend render binding on an indemnitor the judgment in a case in which he did not participate springs from notions of res judicata. The reasoning is that where an indemnitor is notified and can take part in—indeed may control—the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court. Lack of notice, however, destroys the consensual element, vitiates the binding effect of the judgment and entitles the indemnitor to be heard on the issue of the indemnitee's liability. The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements."

█ The record in the present case is inadequate both with regard to facts giving rise to plaintiff's liability to the Huntington bank and with regard to facts establishing that the defendant in this action is bound by the result of the litigation between the Huntington bank and plaintiff in the Circuit Court of Lincoln County.

Obviously, an important issue in this litigation is whether defendant is bound by the state court judgment. If the defendant is so bound, the questions with respect to the effect of the "without recourse" provisions in the notes sold to the Huntington bank will not be involved in the proceeding in this court. However, if the defendant is not bound by the results of the state court action, defendant would be entitled to present evidence on the merits of the claim of the Huntington Bank against plaintiff. Plaintiff has failed to develop the evidence with respect to this question and neither party has raised the question in argument on the motion for summary judgment. This issue, therefore, is not a proper one for summary disposition at this time.

## JUDGMENT ORDER

For the reasons above appearing, it is hereby

Ordered that the plaintiff shall have partial summary judgment against the defendant for its losses resulting from the false certification of Purvis concerning automobiles financed by plaintiff for Hamlin Motor Company (exclusive of the losses encompassed by the state court judgment in favor of The First Huntington National Bank) inasmuch as it has been determined that these losses were within the coverage of the Bankers Blanket Bond and that the defendant is liable to the plaintiff to the extent of such losses. However, in view of the inadequate development of the record concerning the losses at the Huntington bank and particularly with respect to the question of the binding effect of the state court judgment on the defendant, plaintiff's motion for partial summary judgment, with respect to such losses, must be denied.

Bright, Circuit Judge, concurred and filed opinion.