**STERN & CO., a corporation of the State of Pennsylvania, Plaintiff,**

v.

**STATE LOAN AND FINANCE CORPORATION, a corporation of the State of Delaware, Defendant.**

**Civ. A. No. 2429.**

United States District Court
D. Delaware,
at Wilmington.

June 8, 1962.

Plaintiff has filed a complaint for declaratory judgment under 28 U.S.C. §§ 1332 and 2201 for the Court to: a) adjudge defendant to have breached a contract with plaintiff; b) enjoin the breach; and c) award damages to plaintiff. Diversity is present. Cross-motions were filed: defendant moves to dismiss the complaint, and plaintiff seeks summary judgment.

Plaintiff is in the retail business of selling home furnishings and clothing; defendant in the money loan business. It is the parent of a number of operating subsidiaries. Plaintiff alleges among its holdings were all shares of four operating corporations engaged in the loan finance business and, on August 30, 1956, defendant offered to purchase the stock

of plaintiff's operating companies for $2,500,000. The offer was accepted and settlement was made on September 20, 1956. Four separate closing agreements were signed by the parties.

Plaintiff's contention here is defendant is guilty of breach of the agreement by allocating $1,218,742.80 of the purchase price for the stock it sold to defendant to the cost of covenants of plaintiff appearing in two of the four agreements not to compete in the loan business. Defendant and apparently its subsidiaries amortized this cost over a five-year period and claimed such deductions in their income tax returns, i. e., defendant and its subsidiaries in contesting Federal income tax liability in 1956 and subsequent years have contended to the taxing authorities the sum of $1,218,742.80 was paid as consideration for the covenants not to compete. Plaintiff alleges this interpretation of its agreement with defendant has caused the Government to reopen plaintiff's own income tax liability for 1956 and to assert a deficiency against it in the amount of $329,060.55, the difference between the tax already paid by plaintiff at capital gains rates and the possible tax at ordinary income tax rates upon the sale price for the stock it sold defendant. Plaintiff states if the Court enjoins defendant from maintaining its position, under the original contract between the parties, the Internal Revenue Service will withdraw the asserted deficiency in tax against plaintiff.

E. N. Carpenter, II (Richards, Layton & Finger), Wilmington, Del., and W. Wilson White, and Bernard V. Lentz (White & Williams), Philadelphia, Pa., for plaintiff.

Howard L. Williams (Morris, James, Hitchens & Williams), Wilmington, Del., Robert Ash, and Carl F. Bauersfeld (Ash, Bauersfeld & Burton), Washington, D. C., for defendant.

LEAHY, Senior District Judge.

I. *Dismissal.* Defendant's motion for dismissal of the complaint is bottomed on four arguments that:

1) this Court lacks jurisdiction over this subject matter under the Declaratory Judgment Act; 2) such relief as sought by plaintiff is not binding on the United States Treasury Department, not a party here; 3) the present action should be dismissed, in any event, as the complaint and exhibits show defendant made no binding representation regarding plaintiff's federal tax liability such as to support plaintiff's suit at bar; and 4) this Court should not exercise its declaratory judgment jurisdiction, even if it exists, since such exercise is discretionary and because the same issues attempted to be tried here are already before the Tax Court for consideration.

1. 28 U.S.C. § 2201 provides:

"In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes,* any court of the United States, upon the filing of appropriate pleadings, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." (Emphasis added).

As originally adopted in 1934 the exemption with respect to Federal taxes was not contained in the statute, thus leading to serious speculation [1,2] that the then new declaratory judgment act could be used as a quick way for persons to gain a determination of tax status. The additional words were specially fashioned to avoid any such "radical departure from the long-continued policy of Congress * * * with respect to the determination, assessment, and collection of Fed-

1. See, Note, Enjoining the Assessment and Collection of Federal Taxes Despite Statutory Prohibition, 49 Harv.L.Rev. 109 (1935) and cases cited therein.

2. See, Note, Challenging the Validity of a Federal Tax by Means of the Declaratory Judgment, 44 Yale L.J. 1451 (1935).

eral taxes." [3] That the exemption does prevent a taxpayer from obtaining declaratory relief from the Commissioner has been frequently proclaimed through the years.[4]

But, in the case at bar, however, one plaintiff-taxpayer seeks declaratory relief from an alleged breach of contract [5] by the other contracting party, which breach plaintiff claims will result in serious consequences of a tax nature to it. Defendant simply says this matter is "with respect to federal taxes" and obviously falls within the specific exemption found in the present Declaratory Judgment Act.

I cannot agree. For, if plaintiff's allegations in ¶10 of its complaint are true, defendant has breached the contract. If, for example, the contract had stated explicitly what plaintiff claims it stated "by necessary and inevitable implication", i. e., that defendant pledged not to allocate or cause its subsidiaries to allocate any part of the purchase price to the covenants not to compete, found in two of the four separate agreements signed by the parties, then plaintiff would have a valid action for breach of contract against defendant. Too, it would have a valid action under the Declaratory Judgment Act to prevent the alleged subsequent breach from occurring.[6, 7]

3. Sen.Rep. No. 1240, 74th Cong., 2d Sess. 11 (1935); See, Note, Declaratory Judgment in the Federal Courts, 49 Harv.L. Rev. 1351, n. 66 (1935).

4. Singleton v. Mathis, 8 Cir., 284 F.2d 616; Mayer v. Wright, 9 Cir., 251 F.2d 178; Jolles Foundation, Inc. v. Moysey, 2 Cir., 250 F.2d 166; Carmichael v. United States, 5 Cir., 245 F.2d 676; Martin v. Andrews, 9 Cir., 238 F.2d 552; Taylor v. Allan, 10 Cir., 204 F.2d 485; Noland v. Westover, 9 Cir., 172 F.2d 614, cert. den. 337 U.S. 938, 69 S.Ct. 1515, 93 L. Ed. 1744; Commissioner of Int. Rev. v. Procter, 4 Cir., 142 F.2d 824, 154 A.L.R. 1215, cert. den. 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606; Tomlinson v. Smith, 7 Cir., 128 F.2d 808; Red Star Yeast & Products Co. v. La Budde, 7 Cir., 83 F.2d 394; Pilip v. United States, D.C.Alaska, 186 F.Supp. 397, opinion supplemented 191 F.Supp. 943; Christenson v. Brodrick, D.C.Kan., 169 F.Supp. 388; England v. United States, D.C.Ill., 164 F.Supp. 322; Standard Oil Co. (N.J.) v. McMahon, D.C.S.D.N.Y., 139 F.Supp. 690, aff'd 244 F.2d 11; General Mutual Ins. Co. v. United States, D.C.S.D.N.Y., 119 F.Supp. 352; Kyron Foundation, Inc. v. Dunlap, D.C.D.C., 110 F.Supp. 428; John J. Casale, Inc. v. Pedrick, D.C.S.D.N.Y., 72 F.Supp. 848.

5. Paragraph 10 of the Complaint states: "By the Agreement of September 7, 1956, defendant expressly agreed that the sum of $2,500,000 was the purchase price of the stock of the Loan Companies sold by plaintiff to defendant pursuant to said Agreement.
    "By necessary and inevitable implication, defendant further agreed therein: (a) that defendant would upon closing of the transaction allocated or cause its subsidiaries to allocate the entire purchase price of $2,500,000 to the stock of the Loan Companies; (b) that defendant would not thereafter allocate or cause its subsidiaries to allocate any part of the purchase price to anything other than (1) the stock of the Loan Companies, or (2) upon their subsequent liquidation under Section 334(b) (2) of the Internal Revenue Code, [26 U.S.C.A. § 334(b) (2)], to the assets of the Loan Companies themselves received upon, and solely by reason of, such liquidation; and (c) that defendant would not, directly or through any of its subsidiaries, take any action, adopt any position, or make any claim or contention, in connection with the Federal income tax liability of defendant or any of its subsidiaries, inconsistent with defendant's express agreement that the entire sum of $2,500,000 paid to plaintiff as aforesaid was in payment for the stock of the Loan Companies."

6. In Motor Terminals v. National Car Co., D.C.Del., 92 F.Supp. 155, Judge Rodney stated: "A proceeding in the nature of declaratory judgment is a form of remedial procedure which is particularly appropriate where the basic issue underlying the claim of the plaintiff is the interpretation or construction of a contract." (p. 161).

7. The teachings of the Supreme Court indicate the resiliency of the declaratory judgment act makes for a sensitivity to the particular equity of a plaintiff seeking protective relief under the statute. See references contained in the Appendix, *infra*.

Thus I hesitate to deny plaintiff an opportunity to be heard simply on the basis of the exemption in the statute. This Court should examine the facts and determine whether plaintiff's interpretation of the contract is correct. This Court may not determine tax liability; but it may determine facts which may have a direct, even immediate, bearing on what the tax liability will be.[8] The fact that plaintiff has "tax motives" for bringing this suit to determine rights of parties under their contract cannot squeeze this action into the statutory exemption by virtue of depriving this Court of jurisdiction. Such motives are relevant in determining the quantum of taxes due; they are not relevant in determining whether a party has made a claim to which he is entitled to declaratory relief. Veil-piercing techniques have a place in the law, particularly in the law of corporate action and taxation, but such mechanisms should not lead Courts to dismiss timely actions on the basis of a search for such motive-hunting. If the declaratory judgment act affords plaintiff a remedy, the mere bringing of the suit is an act of independent legal significance; and a plaintiff's motive, under such circumstances, has no relevance on whether the Court should exercise its judgment in taking cognizance of the law suit and whether the Court should decide it.

■ 2. Defendant's argument that a judgment of this Court would be binding neither on the Commissioner of Internal Revenue nor the Treasury Department nor the Tax Court is true, but also irrelevant. It should be understood the most plaintiff can receive by way of declaratory judgment from this Court is a determination that defendant has breached its contract with plaintiff. Final decisions as to taxes are decisions for the Tax Court. Functioning under its expertise, it will determine how much, if anything, defendant may claim was paid as consideration for the covenants not to compete mentioned in the agreements. It may engage [as this Court will not] in the balancing process of determining how much, if any, of the $1,218,742.80 allegedly paid for covenants not to compete may be so treated for tax purposes. The point of the matter here is that all plaintiff asks is for this Court to bind defendant against its breach, not the United States. I think this Court has power so to act.

3. Defendant's third point is essentially for dismissal on the merits because the exhibits show it made no representation such as plaintiff claims here. As this claim is similar to that of plaintiff for summary judgment, it shall be considered, infra, together with that particular motion.

■ 4. Defendant's argument that the same issues as are being tried here are already before the Tax Court may have merit. It is true that,

"Upon reaching the conclusion that the ends of justice would be best served by such a course * * [of declining jurisdiction] a court of the United States in its discretion may refuse declaratory relief because another court has jurisdiction in an executory or non-declaratory action of proceedings involving *an issue identical with that involved in the suit for declaratory relief.* Such a conclusion must be based upon sound reasons why under all the circumstances a non-declaratory or

8. Defendant's citation of In re Inland Gas Corporation, 6 Cir., 241 F.2d 374, and Wilson v. Wilson, 4 Cir., 141 F.2d 599, is unconvincing. The former case affirmed the District Court's refusal to accept a corporate reorganization plan; the Court ruled on the reorganization plan and refused to rule on the Commissioner's ruling as to tax consequences. Here, however, plaintiff does not ask for a ruling on tax consequences, a ruling this Court no more than that in Inland Gas is authorized to give.

In Wilson, plaintiff in effect asked the Court to enjoin the Commission from levying various taxes (as well as asking declaratory relief against plaintiff's wife). The Court held there was no controversy as between husband and wife and that the only controversy was between family and Commissioner, thus bringing into play the statutory exemption.

executory action is to be preferred over a suit for a declaration. See Borchard, Declaratory Judgments, p. 181 et seq." (Emphasis supplied.)[9]

Here it would seem the issues may be identical with those before the Tax Court. The same contract may there be interpreted; the same parties may there be heard; the same factors may there be weighed in making a determination as to the tax consequences of the sales agreement.

If the Tax Court does, in fact, take into account issues identical with those that would be taken into account here, and every issue that would be so taken into account, this case might then be ripe for dismissal on the basis of the Tax Court determination. But if the Tax Court does not, the case at bar might then be heard by trial; and, while an injunction would no longer aid plaintiff, damages could and might issue from this Court in the form of a monetary decree were it to find what plaintiff claims here. Meanwhile, it would serve no useful purpose to hear this case at the present time; but it well might be an injustice to dismiss it. Therefore, the present case shall be stayed until the Tax Court's decision is made; this will enable this Court to consider its further decision as to what may then appear to be meet.

II. *Summary Judgment.* While the above decision to stay these proceedings allows this Court the option of staying determination on plaintiff's motion for summary judgment, the motion has been made, briefed, and argued; and it best be disposed of at this time.

The object of a motion for summary judgment "is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." [10] The Supreme Court has again recently restated the general policy with respect to the granting of such motions as follows:

"Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case 'show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.Rules Civ. Proc., [28 U.S.C.A.] This rule authorizes summary judgment 'only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * [and where] no genuine issue remains for trial * * * [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.' Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 [64 S. Ct. 724, 88 L.Ed. 967]." [11]

In the second circuit, debate, always instructive and often profound, has been long-standing between those proponents of the views of Judge Clark, who favor a broader grant of summary judgment, and those of the late Judges Learned Hand and Frank, who favored a more limited grant.[12] In this circuit, the decision has long since been reached

---

9. Samuel Goldwyn, Inc. v. United Artists Corp., 3 Cir., 113 F.2d 703, 710; Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Brillhart v. Excess Insurance Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Crosley Corporation v. Westinghouse Electric and Mfg. Co., 3 Cir., 130 F.2d 474; Creamery Package Mfg. Co. v. Cherry-Burrell Corp., et al., 3 Cir., 115 F.2d 980. See. Borchard, Declaratory Judgments, 2d ed., p. 312; see, Note, Availability of a Declaratory Judgment when Another Suit is Pending, 51 Yale L.J. 511 (1942).

10. Cardozo, J., in Richard v. Credit Suisse, 242 N.Y. 346, 152 N.E. 110, 45 A.L.R. 1041 (1926).

11. Pollar v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458; cf. U. S. v. Diebold, Inc., 82 S.Ct. 993.

12. See, 6 Moore's Fed.Prac., § 56.15(1), pp. 2106–2111.

708

that courts will look particularly closely to insure that parties are not too quickly deprived of a "full dress" trial. Hart & Co. v. Recordograph Corporation, 3 Cir., 169 F.2d 580.[13] In the present case, genuine factual dispute exists on numerous issues which would require sustained and detailed consideration to determine. Two examples should suffice:

■ (a) Plaintiff claims the contract of sale was entered into on September 7, 1956, as a result of its acceptance of an offer made August 30, 1956, by defendant in a letter which defendant stated, in part:

"From your standpoint, the transaction will simply entail your sale of all of the stock of your subsidiaries for the purchase price set out in the first paragraph of this letter. We are advised by counsel that this sale will constitute a taxable transaction for federal income tax purposes, and you will be required to report the gain or profit on each of the sales. By definition of Section 1221 of the 1954 Internal Revenue Code, corporate stock constitutes the capital asset so that the gain or profit on the sales will be taxable at capital gain rates, which at present is a maximum of 25% of the gain.

"While we realize your company is not concerned with our procedures after completion of the purchase of this stock, we felt you might be interested in knowing that after the purchase, our subsidiaries will liquidate and dissolve the corporations which they have acquired under the provisions of Section 334(b) (2) of the Internal Revenue Code. This procedure is necessary since our purpose in this purchase is to acquire

the loan contract of your subsidiaries rather than their stock. Following this liquidation and in line with our corporate policy of having each office a separate corporation, we will form additional subsidiaries in Pennsylvania and New Jersey, each of which will acquire the assets of one office." [14]

Defendant argues that these two paragraphs fall in the same category as every other "vagrant thought" [15] expressed by the parties during the course of negotiation and that only the final agreement dated September 20, 1956 should be considered in determining what the parties meant by the contract.

(b) Plaintiff claims that neither "at the time of execution of these closing agreements, nor at any time prior thereto, had there been any negotiation whatsoever between the parties concerning any covenant not to compete, and no agreement was at any time made which modified the agreement of the parties of September 7, 1956. * * *" [16] Defendant replies that ¶7 of the proposed contract specifically provided:

"As a material part of the consideration for this contract, Seller specifically agrees that it will not, for a period of three (3) years from and after that date of this agreement, either directly or indirectly, individually or in association with others, engage in the business of making loans. * * *" [17]

Defendant further argues that this matter was under negotiation and consideration prior to August 30, 1956,[18] and that the extent of the negotiations is indicated by the fact that the final agreement of September 20, 1956, extended the time limit of the covenants, as stated in the

13. See my discussion in Dovberg v. Dow Chemical Co., E.D.Pa., 195 F.Supp. 337, and cases cited at n. 5, p. 339.

14. Complaint, Appendix A.

15. Transcript of Oral Argument of defendant, p. 49.

16. Brief in Support of Plaintiff's Motion for Summary Judgment, p. 4; Deposition

of Joseph Shanis, Vice President of plaintiff, p. 3.

17. Complaint, Exhibit A-1, ¶ 7.

18. Deposition of Paul Williams, Executive Vice President, and Secretary of Defendant, pp. 3-6; Deposition of L. J. Holroyd, Assistant General Counsel of defendant, pp. 3-5.

draft, from three to five years, and only applied them to two of the four subsidiary corporations purchased by defendant.[19]

The disposition of these two issues alone manifestly would cut much of the heart out of this case. But such issues can be evaluated neither by lawyer's briefs nor by participants' affidavits. They can be critically analyzed for evaluation only by consideration of testimony of witnesses under oath, subject to cross examination and bound by rules of evidence as to what these parties did intend, what these negotiations did encompass, and what these agreements do require. A trial, as Mr. Justice Frankfurter has written, "is not a game of blind man's buff." [20] Neither is the opportunity to grant summary judgment a call for judges to decide cases blindly. Granted too expeditiously, summary judgment becomes summary justice. The summary judgment mechanism negates the inquisitorial and fact-finding function of the trial judge, especially absent the jury as is the case here.

Defendant's motion for dismissal is denied; and plaintiff's motion for summary judgment is also denied. Further action in this case shall be stayed until proceedings involving the parties in the Tax Court are completed.

An order may be submitted.

## APPENDIX

Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 301, 63 S.Ct. 1070, 87 L.Ed. 1407:

" * * * [W]e think it plain also that the enactment of the Act of August 30, 1935, 49 Stat. 1027, 28 U.S.C. § 400(1), which excluded from the operation of the Declaratory Judgments Act all cases involving federal taxes, cannot be taken to deprive the courts of their discretionary authority to withhold declaratory relief in other appropriate cases. This amendment was passed merely for the purpose of 'making it clear' that the Declaratory Judgments Act would not permit 'a radical departure from the long-continued policy of Congress' to require prompt payment of federal taxes. See S.Rep. No. 1240, 74th Cong., 1st Sess., p. 11; H.R.Rep. No. 1885, 74th Cong., 1st Sess., p. 13."

Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784:

"A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. Brillhart v. Excess Insurance Co., 316 U.S. 491, [62 S.Ct. 1173, 86 L.Ed. 1620]; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 297–98, [63 S.Ct. 1070, 87 L.Ed. 1407]; H.R.Rep. No. 1264, 73rd Cong., 2d Session, p. 2; Borchard, Declaratory Judgments (2d ed. 1941) pp. 312–14. It is always the duty of a court of equity to strike a proper balance between the needs

19. Paragraph 7 of the final agreement states:

"As a material part of the consideration for this contract, Seller specifically agrees that it will not, for a period of five (5) years from and after the date of this Agreement, either directly or indirectly, individually or in association with others, engage in the business of making loans in the amount of six hundred dollars ($600) or less under the provisions of the Pennsylvania Small Loan Act [7 P.S. § 751 et seq.], nor under the provisions of any other of the laws of the States of Pennsylvania or New Jersey, in the cities or communities of Allentown, Chester, Easton, Germantown, Hatboro, Kensington, Lancaster, Lansdale, Mayfair, Norristown, Philadelphia, Reading, South Philadelphia, Upper Darby, West Chester, West Philadelphia and Woodland, Pennsylvania or within fifteen (15) miles of the city limits thereof.

"It is understood and agreed that Purchaser shall have the right to convey or assign and transfer this covenant in whole or in part and in such event the transferee shall have the same rights hereunder as Purchaser."

20. Johnson v. United States, 333 U.S. 46, 54, 68 S.Ct. 391, 92 L.Ed. 468.

of the plaintiff and the consequences of giving the desired relief."

Public Service Commission v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (Reed, J., concurring opinion, p. 250, 73 S.Ct. p. 243):

"However, it was recognized that the Declaratory Judgment Act introduced a new method for determining rights into the body of existing law. Therefore the language of the Act was deliberately cast in terms of permissive, rather than mandatory, authority to the courts to take cognizance of petitions seeking this new relief. This enables federal courts to appraise the threatened injuries to complainant, the necessity and danger of his acting at his peril though incurring heavy damages, the adequacy of state or other remedies, particularly in controversies with administrative bodies."