Bernard DAINES, Plaintiff,

v.

ALCATEL, S.A., a French corporation, Alcatel USA, Inc., a Texas corporation doing business in Washington, Defendants.

No. CS–99–0219–JLQ.

United States District Court, E.D. Washington.

July 20, 2000.

Lukins & Annis, Bryce J. Wilcox, Spokane, WA, Ogden Murphy Wallace, Robert G. Andre, Seattle, WA, VanSiclen Stocks & Firkins, Robert C. Van Siclen, Auburn, WA, for Plaintiff.

## MEMORANDUM ORDER AND OPINION DISMISSING ACTION

QUACKENBUSH, Senior District Judge.

Before the court is Defendants' Motion for Summary Judgment and Dismissal (Ct. Rec.34). The court held a hearing on this motion on July 13, 2000. Plaintiff was represented by Bryce Wilcox and Robert

Van Siclen. Defendants were represented by Fred Rivera.

## I. Facts

This case concerns a dispute over tax liability for $6 million held in escrow following a complex transaction between the parties. The following facts are undisputed, unless noted otherwise.

In 1998, Plaintiff Bernard Daines was the chief stockholder of Packet Engines, Inc., a rapidly growing high-technology firm, which he had founded several years earlier. In October 1998, Packet Engines and the Defendants in this case, Alcatel USA, Inc. and Alcatel, S.A, reached an agreement whereby Defendants would purchase Packet Engines for a price of $290 million dollars. As a part of this transaction, Daines agreed to sell all of his stock to Defendants but continue to work as the president and chief executive officer of Packet Engines. In order to secure his performance, Defendants required that Daines deposit $6 million of the amount Defendants would pay for his shares into an escrow account at the Bank of New York. An escrow agreement to that effect was signed by Daines and Defendants on December 11, 1998. The stock purchase and merger was also finalized on December 11, 1998.

The current dispute focuses on the tax consequences of the escrow account. In January 1999, the Bank of New York, which is notably not a party to this litigation, issued two Form 1099s (hereinafter, "the 1099s") to Daines and the Internal Revenue Service which indicated that Daines had received the $6 million in escrow, in addition to other non-escrow funds. According to Daines, the 1099s were issued at the direction of Defendants.

Although Daines apparently did not report the $6 million on his 1998 tax return, the IRS has not questioned Daines about the discrepancy. However, Daines is concerned that an audit is imminent, and has filed this suit to address that concern. Daines seeks two remedies in the current suit. His preferred remedy is a declaratory judgment that the 1099s should not have been issued and an order directing Defendants (but not the Bank of New York) to rescind the 1099s. In the alternative, Daines seeks to enforce an alleged agreement between himself and Defendants which provides that if Daines is subject to tax liability for the escrowed funds, Defendants must advance him the amount of the tax liability without interest. Daines claims that his anticipated liability is approximately $2.4 million.

Defendants' motion for summary judgment seeks summary judgment on the alternative bases that this court lacks jurisdiction to hear the claims and that the 1099s were properly issued.

## II. Standard of Review

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *See Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in favor of the nonmoving party, there are no genuine issues of material fact in dispute. *See* Fed.R.Civ.P. 56(c). The moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.E.2d 202 (1986).

## III. Jurisdictional Challenges

Defendants have raised two jurisdictional challenges. First, they claim that there is no "case or controversy" which would give this court jurisdiction to hear the case. Second, they argue that this court is restricted by statute from issuing an injunction in this case.

### A. "Case or Controversy" Requirement

Article III of the United States Constitution restricts the jurisdiction of the fed-

eral courts to "cases or controversies." In applying this requirement, the courts have developed a number of different jurisdictional hurdles that plaintiffs must clear—standing, ripeness, and mootness—all· of which have their own separate requirements. *See, e.g., Lee v. State of Oregon,* 107 F.3d 1382, 1387 (9th Cir.1997). Although Defendants have not been clear about which of these hurdles they feel applies to this case, their argument is that no case or controversy exists here because the IRS has not taken any action on the 1099s. The court understands this to be a challenge to the ripeness of Plaintiffs' complaint.

■ " '[R]ipeness is peculiarly a question of timing' ... and a federal court normally ought not resolve issues 'involv[ing] 'contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clinton v. Acequia, Inc.,* 94 F.3d 568, 572 (9th Cir.1996), *quoting Regional Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) and *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). If a case is not ripe for adjudication, then a federal court lacks jurisdiction to hear the case under Article III and must dismiss the case without reaching the merits. *See Portland Police Ass'n v. City of Portland,* 658 F.2d 1272, 1274 (9th Cir.1981). In addition, the Declaratory Judgment Act, 28 U.S.C. § 2201, which serves as the basis for at least part of Plaintiff's complaint, does not lessen this jurisdictional requirement; rather, the Act is interpreted as requiring the same showing required by Article III. *See Aydin Corp. v. Union of India,* 940 F.2d 527, 528 (9th Cir.1991). Thus, "mere possibility, even probability, that a person may in the future be adversely affected by official acts not yet threatened does not create an 'actual controversy' " as required by the Declaratory Judgment Act. *Garcia v. Brownell,* 236 F.2d 356, 358 (9th Cir.1956), *cert. denied,* 362 U.S. 963, 80 S.Ct. 880, 4 L.Ed.2d 878 (1960).

Defendants contend they are entitled to summary judgment because the 1099s cannot on their own create tax liability and the IRS has not independently taken any action against Daines as a result of the 1099s. Defendants are correct that the 1099s, on their own, do not create tax liability. Form 1099 is an informational return, filed by a third party to the relationship between the IRS and the taxpayer, which reports income as that third party believes it·to be. The Internal Revenue Code makes it clear that a Form 1099 is not the final word on what a taxpayer's taxable income is. As provided in 26 U.S.C. § 6201(d):

> In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item reported on an information return ... by a third party ... the [IRS] shall bear have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

The Tax Court has held that a Form 1099 is insufficient, on its own, to establish a taxpayer's taxable income. *See Estate of Gryder v. Commissioner,* T.C. Memo. 1993–141, 1993 WL 97427, 65 T.C.M. (CCH) 2298, T.C.M. (RIA) 93,141 (1993), *citing Portillo v. Commissioner,* 932 F.2d 1128 (5th Cir.1991). *See also Portillo v. Commissioner,* 988 F.2d 27, 29 (5th Cir. 1993) (a Form 1099 is "insufficient to form a rational foundation for the tax assessment against the [taxpayers in this case]."). Thus, while a Form 1099 can serve as the basis for the inception of an IRS investigation, it cannot and does not, on its own, create tax liability or establish how much income the taxpayer actually received. Plaintiff does not attempt to dispute that conclusion, but he disputes whether that conclusion means his claims are unripe.

■ Plaintiff's request that this court order Defendants to "advance" him the money to cover his potential tax liability is clearly unripe. The claim of entitlement to the amount of his tax liability is based

on section 13(B) of Plaintiff's November 5, 1998, employment agreement with Defendants, which states, in relevant part:

> In the event that [Daines] is *subject to income tax* on the escrowed Merger Consideration or interest or dividends there prior to release of such consideration, interest or dividends to [Daines], the Company or Alactel shall advance to [Daines] such funds as shall be necessary to pay the taxes .... (Ct.Rec.36, Ex. F, ¶ 13(b).) (emphasis added)

The obligation to pay the advance is expressly conditioned upon Daines becoming "subject to income tax" on the escrowed funds. This condition has not yet occurred. The IRS has taken no action whatsoever to impose income tax on the escrowed funds, and there is no indication that Daines has voluntarily paid taxes on the escrowed funds. The IRS has not done so much as contact Daines regarding the discrepancy between the 1099s and his 1998 tax return, much less go so far as to audit him. The condition in the alleged contract has not occurred and the claim is simply unripe because it asks this court to assume Daines will be forced to pay the taxes when it is merely speculative that the 1099s will have any effect.

Daines nonetheless argues that the claim is ripe because there is a *possibility* that he will be audited, perhaps a probability that he will be audited. His brief is peppered with references to events that may or may not occur. He states, for example, that it is "more likely than not" that he will be audited, and that the 1099s "tend ... to case [sic] doubt upon all other aspects of the Plaintiff's relationship with the IRS." The source for all of these assertions is Daines' accountant. He also claims that *United States v. Citrowske,* 951 F.2d 899 (8th Cir.1991) indicates that an inaccurate 1099 can create a "case or controversy" without more, but in that case the court did not address that jurisdictional issue because the taxpayers *had been audited.*

Since the employment agreement expressly conditions the advance on the actual accrual of tax liability, and no tax liability has yet accrued, the claim that the advance is due is unripe. This case closely resembles *Clinton v. Acequia, Inc.,* 94 F.3d 568, 572–73 (9th Cir.1996), in which the Ninth Circuit held that a suit for breach of contract was not ripe, and therefore could not be heard in the federal courts, because the deadline for the contractual performance had not yet passed. As the court stated in that case, "[w]e have no way of knowing whether [the defendant will breach the contract], but a case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur." *Id.* at 572, *citing Portland Police Ass'n v. City of Portland,* 658 F.2d 1272, 1274 (9th Cir.1981).

This court has no jurisdiction, at least at this time, to consider whether Defendants are bound to advance to Plaintiff the amount of any tax liability he might incur as a result of the funds in escrow before they are released from escrow. Accordingly, Defendants are entitled to summary judgment on that claim, but Plaintiff shall have leave to refile that claim if and when it matures.

This leaves two closely related claims for the court to consider, the request for a declaratory judgment that the 1099s were improperly issued and the request for a declaratory judgment that Defendants must rescind the 1099s. Defendants argue that this claim is not ripe because the only possible purpose for such judgments would be to avoid potential tax liability, which has not yet accrued. Plaintiff counters that these judgments are not about tax liability, but rather are based on a breach-of-contract theory. According to Plaintiff, the parties contracted that Defendants would be considered the "owner" of the escrowed funds and that the issuance of the 1099s was a breach of that contract.

Defendants argue that Plaintiff's "breach of contract" claim is not embodied in the complaint and that Plaintiff invented the argument in order to avoid summary judgment. Defendants are correct that

the complaint is unclear as to the basis for the request for declaratory and injunctive relief. The complaint merely alleges that Defendants "wrongfully directed the issuance" of the 1099s, without indicating whether it was wrongful because they violated the law or because they breached the contract, or both. (Ct.Rec.1, ¶ 4.2.) When one puts the allegation in the context of the rest of the complaint, however, it appears that the complaint does set forth a breach-of-contract claim. The complaint quotes a portion of an agreement which states that "for federal income tax purposes, Alcatel shall be the owner of the Escrow Amount and the Representative Fund until amounts therein are dispersed [sic] in satisfaction of Alcatel's obligations." (Ct.Rec.1, ¶ 3.6.)

Defendants argue strongly that the stated contract provision is simply irrelevant to the allegations in this case, as it concerns escrowed funds other than the $6 million dollars reported in the 1099s. This court will not rule on that issue at this point, however, because that would be a consideration of the merits of the case. As for whether the complaint states a breach-of-contract claim that might give this court jurisdiction, the court acknowledges that such claim could have been more explicit. However, the complaint is sufficient under the liberal pleading rules of the federal courts, which "only require that the averments of the complaint sufficiently establish a basis for judgment against the defendant." *See Yamaguchi v. U.S. Dept. of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997), *citing Danning v. Lavine,* 572 F.2d 1386, 1388–89 (9th Cir.1978). The court finds that the complaint states a breach-of-contract claim.

■ Moreover, the breach-of-contract claim is ripe. The claim rests on two allegations: 1) that the contract allegedly provided that no 1099 would issue with regard to the funds while they were in escrow, and 2) that two Form 1099s issued with regard to the funds while they were in escrow. There is no question that a contract regarding ownership of escrow funds exists (although the relevancy of that contract relied upon is disputed) and that the Bank of New York has already issued the 1099s. Although the requested remedy for the alleged breach (recision of the 1099s), if granted, may or may not mean that Plaintiff will avoid tax liability, the claim has, at least, ripened.

Plaintiff's request for an "advance" of the amount of Plaintiff's tax liability will be dismissed as unripe. Plaintiff's request for a declaratory judgment regarding the issuance of the 1099s is ripe, and the court will consider the additional challenges to this claim.

### B. The Bar Against Injunctions Related to Federal Taxes

Defendants also assert that, even if Plaintiff's breach-of-contract claim is ripe, this court cannot issue the declaratory and injunctive relief that Plaintiff's request because such orders are barred by federal statute. Defendants point to both the Declaratory Judgment Act, 28 U.S.C. § 2201, which bars declaratory judgments "with respect to Federal taxes," and the Anti–Injunction Act, 26 U.S.C. § 7421(a), which prohibits suits "for the purpose of restraining the assessment or collection of any tax."

The law regarding the proper application of these provisions is surprisingly sparse and dated, but a few things are clear. First, the purpose of these provisions is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones University v. Simon,* 416 U.S. 725, 736–37, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), *quoting Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). The Congressional support for these provisions has been steady for nearly 150 years. The Anti–Injunction passed Congress in 1867, while the Declaratory Judgment Act was

**1158**

passed with the federal tax exception in 1935. *See Bob Jones, supra,* 416 U.S. at 732, 94 S.Ct. 2038.

■ Second, although the Declaratory Judgment Act exception would appear to prohibit a wider range of court action than the Anti–Injunction Act, the Declaratory Judgment Act is read to be coextensive with the Anti–Injunction Act. That is, the two acts, put together, prohibit only injunctive relief which would restrain the assessment or collection of federal taxes. *See Perlowin v. Sassi,* 711 F.2d 910, 911 (9th Cir.1983).

It must be noted further that although the prohibition on declaratory and injunctive relief has its most logical application in suits by taxpayers against the IRS, the courts allow non-governmental defendants to use the prohibition as a defense to injunctive relief. *See, e.g., Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766, 770 (9th Cir.1986) (employer allowed to use statutes to defeat employee's attempt to enjoin withholding of income tax from employee's pay); *MCA, Inc. v. American Broadcasting Co., Inc.,* 715 F.2d 475 (9th Cir.1983) (court did not have jurisdiction to determine which of two corporations was entitled to certain tax credits). Thus, Defendants may assert the prohibition in this case as a defense if an order from this court would affect the IRS's ability to assess or collect taxes from Daines for the $6 million in escrow.

Daines argues that an order directing the withdrawal of the 1099s would not impact in any way upon the IRS's ability to assess and collect tax on the escrowed funds if it chose to do so. Daines points out that, as discussed earlier, the information contained on a Form 1099 does not bind the IRS to a particular determination of income. Therefore, he claims, an order to rescind the 1099s issued in this case would not interfere with IRS discretion.

■ This argument falls short upon a closer look. In order to issue the declaratory judgments that Daines requests, this court would have to determine whether the 1099s were accurate. As a matter of ne-

cessity, this would require the court to determine whether the $6 million was distributed or paid to Daines under 26 U.S.C. § 6043 or 26 U.S.C. § 6045, which govern the issuance of informational returns in circumstances such as these. If the court were to determine, as Daines urges, that the 1099s were incorrect because Daines did not receive the escrowed funds, it would in effect be ruling that Daines could not be taxed on those amounts for 1998, the year for which the 1099s were issued. While this would not be a direct injunction against the IRS, it would trample that agency's discretion to determine who, if anyone, is liable for federal income tax on the $6 million and would erect the barrier of *res judicata* directly in the path of any attempts to assess or collect taxes on the $6 million for 1998.

This is true even if the court were to consider the merits of Daines's contention that the parties did not intend that Daines would receive a Form 1099 for the escrowed funds as long as they were in escrow. Daines has pointed to one provision of the numerous agreements surrounding the sale of Packet Engines which he claims reflects this intention. As noted earlier, that provision reads as follows:

... for federal income tax purposes, Alcatel shall be the owner of the Escrow Amount ... until amounts therein are dispersed [sic] ... (Ct.Rec.1, ¶ 3.6).

The court notes again that Defendants argue strenuously that the "Escrow Amount" referred to in this passage is a different escrow fund than the one holding $6 million of the money Daines received in return for his Packet Engines stock. The court does not now rule on which party offers the correct interpretation of this provision. However, even assuming that the court were to find that Daines had offered the correct interpretation of this provision, in order to determine that the 1099s breached this provision, the court would have to find that the amounts were not "dispersed" [sic] to Daines in December 1998. Such a ruling would have direct

income tax consequences and would require this federal district court to inject itself into forbidden regions of federal tax law.

Two Ninth Circuit decisions lead this court to the conclusion that, in these circumstances, the court does not have jurisdiction to issue the relief that Daines requests. In *Noland v. Westover*, 172 F.2d 614 (9th Cir.), *cert. denied*, 337 U.S. 938, 69 S.Ct. 1515, 93 L.Ed. 1744 (1949), the court was faced with a declaratory judgment suit filed by a doctor who received payment for his services from a charitable trust of which he was the sole beneficiary. The IRS demanded that he pay taxes on amounts that the trust had distributed to him. The doctor requested that the federal district court issue a declaratory judgment which would state that the funds in the trust were owned by the trust, and not by the doctor, and thus were not taxable to the doctor. The Ninth Circuit held that such a declaratory judgment would be in violation of the federal tax exception to the Declaratory Judgment Act and dismissed the case for lack of jurisdiction. *See id.* at 615. In *Noland*, as in this case, the plaintiff sought a declaration of ownership which, while it would not have actually enjoined the IRS, would have required the court to essentially decide whether it would be proper to tax the plaintiff for receipt of the funds in question.

The Ninth Circuit reached a similar conclusion in *MCA, Inc. v. American Broadcasting Companies*, 715 F.2d 475 (9th Cir. 1983). In that case, MCA had produced films for the ABC television network, giving rise to investment tax credits. Both companies had claimed the credits, and the IRS had determined that MCA was entitled to use them. ABC then filed a tax refund action in the Court of Claims alleging that it was entitled to the credits. MCA then filed an action in federal district court in which it requested a declaratory judgment that it, and not ABC, was entitled to the credits. Even though the requested declaratory judgment would have concurred with the IRS's earlier holding, the Ninth Circuit held that the district

court did not have jurisdiction to consider such a suit under the Declaratory Judgment Act's federal tax exception. *See id.* at 476. As the Ninth Circuit noted, "it is fundamental to *tax jurisprudence* that declaratory judgments and injunctions are rarely, if ever, granted. Such relief would unduly disrupt the revenue collection process." *Id., citing Bob Jones University v. Simon*, 416 U.S. 725, 747, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (emphasis added). *See also Wilson v. Wilson*, 141 F.2d 599 (4th Cir.1944) (there was no jurisdiction under the Declaratory Judgment Act to consider merits of a suit which sought a declaratory judgment as to the respective tax liability of partners for partnership income); *Hoffman v. United States*, 130 B.R. 526, 529–30 (W.D.Wis.1991) (federal courts lacked jurisdiction to hear request from bankruptcy trustee for a declaratory judgment that he was not responsible for the collection and payment of federal payroll tax).

The one possibly important difference between these cases and the current dispute is that in *Noland, MCA,* and the cases from outside the Ninth Circuit, the IRS had already indicated what its position was regarding the tax liability. Yet this distinction is merely factual. In those cases, as in this case, the requested relief would require a federal district court to determine ownership of certain funds. To determine ownership is, essentially, to determine tax liability. In addition, in this case, as in the cases cited above, the only possible reason for the requested relief is to avoid possible tax liability. *See* Plaintiff's reply brief, Ct. Rec. 56, p. 7 (the goal of the requested recision is to "provide notice to the I.R.S. that the 1099s were issued in error"). The Declaratory Judgment Act and the Anti–Injunction Act bar this court from making such a determination.

Daines disagrees that the statutes bar this court from issuing the requested relief, but the cases he relies on are unconvincing. He points primarily to *Church of Scientology of Celebrity Centre, Los Ange-*

*les v. Egger,* 539 F.Supp. 491 (D.D.C.1982). In that case, the plaintiffs had filed applications with the IRS in which they sought exemption from self-employment taxes. After the applications had languished in the IRS's hands, the plaintiffs filed suit in federal district court requesting an injunction which would compel the IRS to process the applications. The court held that the injunction would not violate the Declaratory Judgment Act or the Ant–Injunction Act but the court was also very clear that its holding was narrow. The court was careful to point out that the plaintiffs requested *only* that the IRS *process* the applications, and did not request a declaration that the IRS grant the applications. *See id.* at 494. Nothing in the injunction would "preclud[e the IRS] from assessing and collecting ... taxes" on the plaintiffs if the IRS denied the applications. *Id.* In other words, the injunction would not impinge on the IRS's ability to make a substantive determination about whether the tax should be assessed and collected—it merely directed them to make the determination. *Church of Scientology* is therefore inapposite to this case, where the requested relief would require a judgment on the substance of Daines's defense against any future tax assessment.

Daines also directs this court to *Stern & Co. v. State Loan and Finance Corp.,* 205 F.Supp. 702 (D.C.Del.1962). *Stern* arose out of a transaction under which the defendant bought a retail business from plaintiff for $2.5 million. According to the plaintiff, the defendant had agreed under the closing agreements that it would not make any representation to the IRS that was inconsistent with the conclusion that all of the $2.5 million was in payment for stock. The defendant, however, had claimed in its federal tax return that approximately half of the price was in consideration for a covenant not to compete. According to the plaintiff, this resulted in an IRS determination that the plaintiff was not entitled to capital gains tax rates for a significant portion of the purchase price. The plaintiff filed suit in federal district court, seeking a declaratory judgment that defen-

dants had breached the contract. Even though a judgment for the plaintiff could have had major tax consequences and perhaps result in a more favorable tax position for the plaintiff, the court held that it had jurisdiction to grant the requested relief because it would remedy a breach of contract that happened to have tax consequences. *See id.* at 704–05. The court's reasoning was somewhat opaque, but it held specifically that "this Court may not determine tax liability, but it may determine facts which may have a direct, even immediate, bearing on what the tax liability will be." *Id.* at 706.

*Stern* is virtually indistinguishable from this case. If the case were binding on this court, *Stern* would dictate the outcome of Defendants' claim that this court lacks jurisdiction to consider Daines' claim. But *Stern* is not binding on this court. Rather, this court is bound to follow the holdings of the Ninth Circuit in *Noland, supra,* and *MCA, supra,* which stand for the proposition that this court *cannot* determine facts that will have a direct or immediate effect on Daines' tax liability. *Stern* stands in direct conflict with these cases and the court will not follow it.

The same problem lies with the final case Daines has cited, *Henshel v. Guilden,* 300 F.Supp. 470 (S.D.N.Y.1969). The *Henshel* court asserted jurisdiction over a suit that sought a declaratory judgment as to whether a trust or an estate was liable for a tax deficiency assessed by the IRS. The court held that because the suit did not request that the court declare whether tax was due or determine the amount of tax owed, the federal tax exception to the Declaratory Judgment Act did not apply. *See id.* at 472.

This court finds the *Henshel* court's reading of the statute particularly narrow and unmindful of "the powerful governmental interests in protecting the administration of the tax system from premature judicial interference." *See Bob Jones University v. Simon,* 416 U.S. 725, 747, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). Moreover, the *Henshel* court's holding is almost

exactly opposite that of *Noland, supra*, in which the Ninth Circuit held that it did not have jurisdiction over a declaratory judgment action which sought to determine whether a trust or the trust's beneficiary was liable for taxes that had been assessed by the IRS. *See Noland, supra*, 172 F.2d at 615.

This court therefore concludes that, under Ninth Circuit precedent, it may not entertain Daines' request for a declaratory judgment that the 1099s were improperly issued. To decide the dispute, the court would be forced to decide whether Daines bore the tax liability for the $6 million in escrow, which would impermissibly infringe upon IRS and federal tax courts' discretion to make such determinations. Accordingly, Defendants' motion for summary judgment will be **GRANTED.**

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment and Dismissal (Ct.Rec.34) is **GRANTED.** Daines' complaint and claim for a declaratory judgment regarding the issuance of the 1099s shall be **DISMISSED WITH PREJUDICE.** Daines' complaint and claim for an order that Defendants must pay an "advance" of the amount of any tax liability shall be **DISMISSED WITHOUT PREJUDICE,** on the grounds that he may refile the claim if it becomes ripe.

2. Defendants' Motion for Leave to Cite Unpublished Authority (Ct.Rec.40) is **GRANTED.** This motion was unopposed and sought to cite decision of the Federal Tax Court, which are not reported in the standard reporters listed in Local Rule 7.1(g).

3. All other pending motions are **DENIED AS MOOT.**

**IT IS SO ORDERED.** The Clerk of this Court shall enter this order, enter judgment, provide copies to counsel, and thereafter shall close this file.